IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KRISTIN JENNINGS,

                       Plaintiff,

    v.

STATE OF WISCONSIN, VILLAGE OF OREGON,
DANE COUNTY, SHERIFF KALVIN BARRETT,
JENNIFER PAGENKOPF, TREVOR BIERMAN,
JEREMY HATFIELD, CHAD SCHAUB, and JACKSON
BOLLIG,

                       Defendants.

OPINION and ORDER

24-cv-220-jdp

---

Plaintiff Kristin Jennings, proceeding without counsel, brings this lawsuit against the state of Wisconsin, Dane County, the village of Oregon, and various individual law enforcement officials, contending that the defendants violated her rights under state and federal law when she was arrested while delivering her children to their father pursuant to a custody agreement. The state and village defendants each move to dismiss the case, and the county defendants move for judgment on the pleadings. Dkt. 16; Dkt. 21; Dkt. 25.

I will grant the county and state defendants' motions in their entirety, and I will grant the village defendants' motion in most respects: officers had probable cause to arrest and detain Jennings pursuant to an arrest warrant, and Jennings asserts many claims against defendants who had no personal involvement in the relevant events. But I will deny the portion of the village defendants' motion pertaining to the alleged use of excessive force against Jennings in arresting her.

ALLEGATIONS OF FACT

I draw the following facts from Jennings's complaint. Dkt. 1. I may also consider state court filings and matters of public record. *See Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039 (7th Cir. 2019).

## A. Jennings's previous family court disputes

Kristin Jennings, formerly Kristin Bausch, has been involved in a Dane County family court proceeding with her ex-husband since May 2021.[1] On July 20, 2023, Judge Jacob Frost entered an order finding Jennings in contempt of the divorce judgment. The village defendants have provided a copy of this order. Dkt. 23–1. Judge Frost found that Jennings failed to comply with the child custody placement order or abide by various financial obligations pursuant to the default divorce judgment, which Judge Frost characterized as an "almost complete disregard" of the court's order. Dkt. 23-1, ¶¶ 4, 5–10. Judge Frost's order gave Jennings the chance to purge the contempt order if she complied with various conditions contained within the order by the end of the following day. The order stated that Jennings would spend 90 days in jail if she failed to purge the contempt and follow the terms of the divorce judgment.

Judge Frost issued a bench warrant for Jennings on August 1, 2023; the warrant stated that Jennings failed to comply with the court's previous order.

## B. Jennings's arrest

On October 18, 2023, Jennings completed a custody transfer of her two children to her ex-husband. Upon completion of the transfer, two village of Oregon Police Department officers, defendants Jackson Bollig and Jeremy Hatfield, approached Jennings in her vehicle and

---

[1] *In re the marriage of Kristin Anne Bausch and Christopher John Bausch*, No. 2021FA822, available at https://wcca.wicourts.gov.

informed her that she was under arrest. Jennings protested, stating that she had done nothing wrong and expressing confusion about the basis for her arrest. In response, officer Bollig instructed Jennings to exit her vehicle. When Jennings did not immediately comply, Bollig opened the passenger-side door of her vehicle and "knocked [Jennings] to the floor" of her vehicle, which caused Jennings to hit her head. Dkt. 1, ¶ 88. Bollig then attempted to restrain Jennings, causing her to sustain additional injuries including scratches, contusions, and other harm to her knees and feet.

Officer Bollig instructed Jennings to stand and exit the van, but Jennings informed the officers that her injuries were so severe that she was "unable to stand" or "use [her] extremities." *Id.*, ¶¶ 96–97. When Jennings did not stand to exit her vehicle, officer Bollig "dragged her" out of the van and "slammed" her onto the concrete, resulting in additional injury to her legs. *Id.*, ¶¶ 99, 101. The officers then placed Jennings in handcuffs that she asserts were excessively tight and caused further injury. In the body of her complaint, Jennings has included photos of her injuries taken two weeks after her arrest. The photos depict what Jennings describes as a "scrape" to her ankle and one "larger than quarter-sized" bruise to her shin. *Id.*, ¶¶ 141–142.

During the arrest, Jennings repeatedly informed the officers she was experiencing pain and discomfort. The officers transported her to a hospital for examination. She was released from the hospital and transported to the Dane County Jail later that same night.

At her initial appearance, a Dane County judge informed Jennings that she would "be released in a few hours" and that "there was no other reason to hold her." *Id.*, ¶ 182. However, a few hours later, Jennings was informed that she would not be released that evening because she was being charged with resisting arrest. Jennings asserts that this arrest charge was

retaliatory, filed in direct response to her statements to the officers that she intended to "take action for her loss of liberty." *Id.*, ¶ 257.

Following her initial appearance, Judge Frost presented Jennings with documents to sign. Jennings refused to sign them because she believed that the documents would "sign her rights away." *Id.*, ¶ 196. A few days later, a Dane County social worker visited Jennings and again presented her with papers to sign. Instead of signing her name, Jennings signed the documents with the phrase "UCC–1–308." *Id.*, ¶ 218. The social worker informed her that this signature was insufficient and that Jennings would not be released from jail unless she signed her name. Jennings ultimately signed the documents.

## C. Jennings's release from custody

Later that day, Jennings was released from the Dane County Jail, placed under house arrest, and fitted with an ankle monitor. After approximately two months, Jennings was released from home supervision, and the ankle monitor was removed. In her complaint, Jennings includes a photo of her foot, asserting that the monitor was secured too tightly and caused bruising to her ankle and heel. *Id.*, ¶¶ 244–245.

A few days after her release from house arrest, Jennings contacted the Dane County Sheriff's Office on two occasions to request the names and badge numbers of all officers involved, as well as the body-worn camera footage from her arrest. However, Jennings was never provided with any of the requested information.

ANALYSIS

Jennings brings various federal-law and state-law claims against three sets of defendants: (1) the village of Oregon and village police department employees Jennifer Pagenkopf, Trevor

4

Bierman, Jeremy Hatfield, Chad Schaub, and Jackson Bollig; (2) the state of Wisconsin; and (3) Dane County and its sheriff, Kalvin Barrett.

The village defendants and the state of Wisconsin move to dismiss, and Dane County moves for judgment on the pleadings. The standards of review for a motion to dismiss and a motion for judgment on the pleadings are the same. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The question is whether the complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). I must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the non-moving party.

## A. Sovereign citizen theories

Before addressing each set of defendants' motions, I note that much of Jennings's complaint relies on "sovereign citizen" theories of law challenging the legitimacy of federal, state, and local governments that have long been discredited. *See, e.g., Bey v. State of Indiana*, 847 F.3d 559, 559–60 (7th Cir. 2017). I will disregard any of Jennings's arguments based on sovereign citizen theories when analyzing the motions below.

## B. Village of Oregon defendants

### 1. Body-worn camera footage of Jennings's arrest

The village defendants submitted body-worn camera footage of Jennings's arrest as an exhibit to their motion to dismiss. Dkt. 23-2. They request that I consider the footage when ruling on their motion to dismiss, arguing that the footage captures the entirety of the arrest and contradicts Jennings's account, showing that "minimal force was used" and that "an objective officer would have believed that the amount of force used . . . was reasonable." Dkt. 22, at 15.

5

"Typically, motions to dismiss brought under Rule 12(b)(6) cannot include materials outside the pleadings." *Flores v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 103 F. Supp. 3d 943, 948 (N.D. Ill. 2015) (citing *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006)). Nonetheless, I could consider the footage had Jennings attached it to her complaint as an exhibit, or if she had referred to it in her complaint and it was central to her claims. *Esco v. City of Chi.*, 107 F.4th 673, 678–79 (7th Cir. 2024). Neither of those circumstances are present here, so I won't address the footage directly in this order.

### 2. Federal-law claims

#### a. False arrest, false imprisonment, and malicious prosecution

Jennings attempts to bring false arrest, false imprisonment, and malicious prosecution claims against the village defendants. To survive a motion to dismiss on a false arrest claim, a plaintiff must allege facts that, if true, would establish that the arrest was made without probable cause. *Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013). False imprisonment refers to a "detention without legal process." *Brown v. Dart*, 876 F.3d 939, 941 (7th Cir. 2017) (citing *Wallace v. Kato*, 549 U.S. 384, 389 (2007)). And to succeed on a malicious prosecution claim, a plaintiff must show, among other things, that a prosecution was instituted without any probable cause. *Thompson v. Clark*, 596 U.S. 36, 44 (2022).

Jennings doesn't properly state a claim for relief under any of these theories because the public record reflects that a warrant for her arrest was issued in connection with her family court dispute. When a judge authorizes an arrest, as Judge Frost did here, "we presume [the] validity of the warrant and information offered to support it." *Dollard v. Whisenand*, 946 F.3d 342, 354 (7th Cir. 2019) (alteration in original). "That is, we presume probable cause." *Johnson v. Myers*, 53 F.4th 1063, 1068 (7th Cir. 2022). The existence of probable cause for an arrest is

an "absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution." *Hokamp v. Miller*, No. 21-cv-1125, 2023 WL 129793 at *7 (E.D. Wis. Jan. 9, 2023) (citing *Schertz v. Waupaca Cnty.*, 875 F.2d 578, 582 (7th Cir. 1989)). Accordingly, I will grant the village defendants' motion to dismiss these claims.

### b. Excessive force

Jennings contends that defendant officers Bollig, Hatfield, and Bierman used unreasonable force during her arrest.

Jennings alleges that officer Bollig used excessive force against her in the following ways: (1) Bollig knocked Jennings to the floor of her van and dragged her across the floor; (2) Bollig dragged Jennings out of her van and slammed her into the concrete; and (3) Bollig was involved in handcuffing Jennings with cuffs that were too tight.

Excessive force claims arising under § 1983 are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Determining whether an officer's use of force is reasonable depends on the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. Here, Jennings was being arrested on a contempt charge, not a violent offense. She asserts that she was calm, that she did not resist arrest, and that she attempted to de-escalate the situation. Based on the allegations in her complaint, Jennings has adequately alleged that Bollig's use of force was unreasonable. Accordingly, I will deny the village defendants' motion to dismiss the excessive force claim against officer Bollig.

Jennings's allegations against defendant Hatfield are less clear. Jennings states that he was involved in applying her handcuffs too tightly, but Jennings does not specify whether it was Hatfield, Bollig, or both officers who applied the handcuffs. An officer's use of excessively tight handcuffs can constitute excessive force in violation of the Fourth Amendment if the officer knowingly applies the handcuffs in a way that inflicts unnecessary pain or injury. *Day v. Wooten*, 947 F.3d 453, 462 (7th Cir. 2020); *Howell v. Smith*, 853 F.3d 892, 900 (7th Cir. 2017). An officer may also be liable for failing to intervene in another officer's use of excessive force if the officer had a realistic opportunity to prevent the harm. *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014). "A 'realistic opportunity' means a chance to warn the officer using excessive force to stop." *Id.*

A mere complaint that handcuffs are too tight, without more, is insufficient to establish excessive force. *Day*, 94 F.3d at 462. But Jennings alleges that she repeatedly informed the officers that the handcuffs were too tight and that they caused bruising and contusions to her wrists. These allegations suggest that Hatfield either directly used excessive force against Jennings or had a realistic opportunity to stop Bollig from injuring Jennings. I will deny the village defendants' motion to dismiss her claim against Hatfield.

Jennings also brings an excessive force claim against Officer Bierman, but her complaint fails to allege any specific actions by Bierman that could constitute excessive force. Jennings acknowledges that Bierman was not present during her arrest. Rather, Bierman encountered her later during her medical examination at the hospital and he subsequently transported Jennings from the hospital to the Dane County Jail. Because Jennings's allegations do not support a claim of excessive force against Officer Bierman, I will dismiss this claim against him.

### c. *Monell* claim

Jennings brings a *Monell* claim against the village of Oregon, asserting that the village maintains a "de-facto policy, regulation, decision or custom condoning unreasonable force in executing arrests, unreasonable searches and seizures, and wrongful arrests, racial profiling and/or otherwise violating person's equal protection rights" Dkt. 1, ¶ 401. A *Monell* claim refers to a civil rights claim under § 1983 in which a plaintiff seeks to hold a municipal entity liable for constitutional violations. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Under § 1983, municipalities are not vicariously liable for the acts of their employees. However, a municipality may be liable when the "execution of a government's policy or custom . . . inflicts the injury." *Id.* at 694; *see also Schlessinger v. Salimes*, 100 F.3d 519, 522 (7th Cir. 1996). To state a *Monell* claim, a plaintiff must satisfy two main elements. First, the plaintiff must identify a municipal policy, custom, or widespread practice that caused the plaintiff's alleged constitutional violation. *Monell*, 436 U.S. at 691. Second, the plaintiff must establish the requisite causation, showing that the policy or custom was the "moving force" behind the constitutional deprivation through the municipality's "deliberate conduct." *Id.* at 694.

Jennings's complaint does not include any allegations that the village has a policy or custom condoning unconstitutional arrests. She offers no examples or evidence beyond her own arrest to suggest the existence of such a policy or practice. Although courts have not adopted any bright-line rules for how many instances are needed to establish a widespread custom or practice, it is well settled that "a single incident—or even three incidents—[will] not suffice." *Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014). Accordingly, I will grant the village defendants' motion to dismiss this claim.

### 3. State-law claims

#### a. Assault and battery

Jennings seeks to bring Wisconsin-law assault or battery claims against the individual village defendants. The elements of a Wisconsin civil battery claim are intentional bodily harm to the plaintiff without the plaintiff's consent. *See* Wis JI—Civil 2005. "An officer may be guilty of assault and battery if he uses unnecessary and excessive force or acts wantonly and maliciously." *State v. Mendoza*, 80 Wis. 2d 122, 154 (1977). I've already concluded that Jennings's allegations could support excessive force claims against defendants Bollig and Hatfield; for the same reasons her allegations support Wisconsin-law assault and battery claims against them. Jennings may also bring a claim against defendant Oregon Police Chief Jennifer Pagenkopf under a *respondeat superior* theory of liability. *See Voss v. Kauer*, No. 18-cv-848-jdp, 2019 WL 144696, at *2 (W.D. Wis. Jan. 9, 2019). I will grant defendants' motion regarding defendant Bierman because Jennings does not allege that Bierman was involved in the use of force.

#### b. Intentional infliction of emotional distress

Jennings brings claims for intentional infliction of emotional distress against the village defendants. To establish this claim, a plaintiff must satisfy four elements: (1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause-in-fact of the plaintiff's injury; and (4) the plaintiff suffered a severe, disabling emotional reaction in response to the defendant's conduct. *Wright v. Hasley*, 86 Wis. 2d 572, 573, 273 N.W.2d 319, 320 (1979).

It is not enough for the plaintiff to show that the defendant intentionally engaged in conduct that led to the plaintiff experiencing emotional distress. "There must be something

more than a showing that the defendant intentionally engaged in the conduct that gave rise to emotional distress in the plaintiff; the plaintiff must show that the conduct was engaged in for the purpose of causing emotional distress." *Rabideau v. City of Racine*, 2001 WI 57, ¶ 36, 243 Wis. 2d 486, 627 N.W.2d 795. I will grant the village defendants' motion to dismiss these claims because nothing in Jennings's complaint suggests that officers' conduct was "extreme and outrageous" or that their actions were undertaken with the specific purpose of causing her emotional distress.

### c.  Abuse of process

Jennings brings claims for abuse of process against the village defendants, asserting that the defendants "illegally or improperly perverted the legal system without probable cause" against her. Dkt. 1, ¶ 438. An abuse of process claim addresses the misuse of a legal process against another "primarily to accomplish a purpose for which it is not designed." *Brownsell v. Klawitter*, 102 Wis. 2d 108, 114, 306 N.W.2d 41, 45 (1981) (quoting Restatement (Third) of Torts § 682). Such claims require evidence of a definite act or threat that is not authorized by the process. *See Schmit v. Klumpyan*, 2003 WI App 107, ¶ 7, 264 Wis. 2d 414, 663 N.W.2d 331. Additionally, the process must have been used primarily to accomplish an ulterior motive, meaning a purpose for which the process was not designed. *Id.*

I will grant the village defendants' motion to dismiss these claims because the officers had probable cause to arrest Jennings pursuant to a valid warrant and Jennings's allegations do not otherwise support such a claim.

### 4.  Officer Schaub

Jennings brings multiple state and federal law claims against Officer Schaub, whom Jennings identifies as a member of the Oregon Police Department. The village defendants state

that this is incorrect and that Schaub worked for Dane County. But in any event, Jennings fails to state any claims against Schaub: the only reference to him is that Jennings witnessed Schaub discuss "undisclosed papers" with Officer Bierman after Jennings was transported to Dane County Jail. Dkt. 1, ¶ 161. That bare allegation does not support a claim for relief, so I will dismiss Schaub from the case.

### 5. Police Chief Pagenkopf

In addition to the assault-and-battery claim that I have already addressed, Jennings brings numerous federal and state law claims against village of Oregon Police Chief Jennifer Pagenkopf, but Jennings does not allege that Pagenkopf was present during her arrest or otherwise involved in the arrest, so I will grant the village defendants' motion to dismiss regarding these claims.

## C. Dane County defendants

### 1. Sheriff Barrett

Jennings alleges several federal and state law claims against Sheriff Barrett in his individual capacity. I take Jennings to allege the following federal-law claims against Barrett: (1) false arrest; (2) excessive force; (3) false imprisonment; (4) malicious prosecution; and (5) conspiracy to interfere with civil rights. Most of these claims fail because there was probable cause for Jennings's arrest and detention. Moreover, these claims require that the defendant was personally involved in the alleged constitutional violation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Jennings alleges only that Barrett engaged in a conspiracy to "impede the due course of justice" and "deny [Jennings] the equal protection under the laws" by orchestrating her arrest, Dkt. 1, ¶ 384, and that Barrett had a duty to ensure that the sheriff's office's policies comply with state and federal law. These conclusory statements are not enough

to establish Barrett's personal involvement in the events. *See Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir. 1992) ("A complaint must contain more than mere conclusory allegations of such a conspiracy; a factual basis for such allegations must be provided.").

As for Jennings's state law claims against Barrett, she brings claims for intentional infliction of emotional distress, assault and battery, breach of fiduciary duty, and breach of contract. But Jennings does not allege that Barrett or his employees were directly involved in her arrest so she cannot bring these claims against Barrett. Jennings's claims for breach of contract and breach of fiduciary are rooted in frivolous sovereign citizen theories regarding a "judicial notice" letter that she sent to Barrett before her arrest; I will disregard those arguments.

Jennings also attempts to bring claims against Barrett in his official capacity, but those claims are redundant to the claims she brings against Dane County itself. *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) (observing that "nothing was added" when plaintiff sued the mayor in his official capacity as well as the city because such official-capacity suits duplicate claims against the government entity). Accordingly, I will grant the Dane County defendants' motion for judgment on the pleadings regarding Jennings's claims against Barrett.

### 2. Dane County

Jennings contends that Dane County is liable for her false arrest, false imprisonment, malicious prosecution, and the excessive force used against her. Jennings asserts that Dane County has an official policy or custom that condones: (1) the use of excessive force during an arrest; (2) unreasonable searches and seizures; (3) wrongful arrests; (4) violation of an individual's Fourth and Fourteenth Amendment rights; and (5) racial profiling. Jennings admits that these customs "may not have received written formal approval," Dkt. 1, ¶ 402, but she

states that the county had an obligation to train its employees not to violate an individual's constitutional rights.

These claims fail for multiple reasons. Jennings's allegations are too conclusory to state a *Monell* claim. *See Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985) ("A complaint that tracks *Monell's* requirement of official policy with bare allegations cannot stand when the policy identified is nothing more than acquiescence in prior misconduct."). Judge Frost's warrant provided probable cause for Jennings's arrest and detention, and there are no allegations suggesting that county personnel was responsible for the alleged excessive force. I will grant the county defendants' motion for judgment on the pleadings concerning the claims against Dane County.

**D. State of Wisconsin**

Jennings asserts that the state, along with the other named defendants, violated her constitutional rights. She contends that the conditions of her arrest violated her Fourth and Fourteenth Amendment rights to an extent so "reckless and wanton" as to "justify the imposition of punitive damages on the STATE." Dkt. 1, ¶ 415 (capitalization in original). But The state of Wisconsin is not a "person" that can be sued for constitutional violations in a lawsuit brought under § 1983. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 65–66 (1989). Moreover, Jennings does not allege that the state had any involvement in the events underlying her arrest or detention. I will grant the state's motion to dismiss.

CONCLUSION

I am granting the county defendants' and the state's motions in their entirety, dismissing those defendants from the case. I am granting the village defendants' motion to

dismiss in large part, leaving only Jennings's excessive force and assault-and-battery claims against defendants Bollig, Hatfield, and Pagenkopf.

ORDER

IT IS ORDERED that:

1. The state of Wisconsin's motion to dismiss, Dkt. 16, is GRANTED. The state is DISMISSED from the case.

2. The Dane County defendants' motion for judgment on the pleadings, Dkt. 25, is GRANTED. Defendants Dane County and Kalvin Barrett are DISMISSED from the case.

3. The village defendants' motion to dismiss, Dkt. 21, is GRANTED in part; defendants Bierman, Schaub, and village of Oregon are DISMISSED from the case.

Entered January 15, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge